POTOMAC INSURANCE CO., Etc. *v.* WILKINSON.

April 19, 1954

No. 39184      61 Adv. S. 35      71 So. 2d 765

*Norman C. Brewer, Jr.,* Greenwood; *W. D. Womack, Jr.,* Belzoni, for appellant.

*Montgomery & Varnado,* Belzoni, for appellee.

ETHRIDGE, J.

Appellee, M. L. Wilkinson, brought this suit in the Circuit Court of Humphreys County against appellant, The Potomac Insurance Company of the District of Columbia, hereafter referred to as Potomac. It was brought in June 1952 for the willful conversion by Potomac of appellee's automobile. Damages were claimed in the amount of $800, the value of the car, and $2,000 punitive damages. The jury rendered a verdict for Wilkinson for $800, from which this appeal was taken.

The facts upon which the issues in this case are based began in 1949. Wilkinson owned a 1948 Chrysler New Yorker automobile, upon which Potomac had written a

collision insurance policy. On May 15, 1949, this car was damaged in a collision. In March 1950, Wilkinson sued Potomac in Cause No. 1959 in the Circuit court of Humphreys County. The declaration was in two counts, the first being upon the insurance contract for damages to the car of $2,300. The second count alleged that Potomac had taken the car and converted it without plaintiff's consent, had refused to return it to plaintiff's possession, and by reason of this conversion the plaintiff had been damaged in the sum of $2,750. To this declaration, Potomac filed a general demurrer averring a misjoinder of cause of action, one being in contract and the other in tort. The circuit court overruled the general demurrer, but before submission of the case, the trial court excluded from the jury any issue of liability under the second count in tort. In Cause No. 1959 the jury returned a verdict for plaintiff of $2,300, plus interest, from the date of the collision. The judgment was dated February 7, 1951. Potomac then appealed to this Court from that judgment, and on March 3, 1952, it was reversed and the cause remanded. Potomac Insurance Company v. Wilkinson, 213 Miss. 520, 57 So. 2d 158 (1952). This action was taken because of errors in instructions, which submitted to the jury the hypothesis of a total loss of the car. The Court held that the testimony showed that the car was subject to repair. The opinion stated: "The first count is ex contractu and the second ex delicto. It is in point to note that in the first count the plaintiff sued for the sum of $2,300, and in the second for $2,750. A demurrer based upon a misjoinder of causes of action was overruled as was also a later motion to require the plaintiff to elect between these inconsistent counts. The demurrer ought to have been sustained and an election between the counts compelled. However, such error is now without point since the court excluded from the jury any consideration of liability under the second count. We do not hold that this course is in all cases curative of the precedent error,

since it is conceivable that testimony may be introduced upon an erroneous but justifiable assumption that a second inconsistent count remains open to be established by evidence which would otherwise be irrelevant to the first count. Such is not the situation here.''

On the second trial of Cause No. 1959, after it was remanded, the jury returned a verdict of $1,184.72 on the insurance contract for repairs and damages to the car. This judgment was dated July 8, 1952. It was paid in full by the insurance company.

On June 5, 1952, a little over a month before Wilkinson obtained his judgment of July 8, 1952, in Cause No. 1959 in the suit on the contract, Wilkinson brought the present suit against Potomac in the Circuit Court of Humphreys County. This was a tort action for conversion of the car by Potomac. The declaration charged that on June 20, 1949 (the collision occurred on May 15, 1949) the plaintiff owned the automobile which had been in the collision and was worth in its damaged condition at that time the sum of $800; that on that date Potomac willfully and maliciously took and carried away the car from plaintiff's possession without his consent. That although plaintiff had often requested defendant to return the car, defendant had not done so; and that the plaintiff had been deprived of its possession and use since that time. Hence Wilkinson asked for a judgment of $800 for the value of the car, and punitive damages of $2,000.

Potomac's answer denied the averments of the declaration. It contained a separate plea of res judicata, setting up that previously plaintiff in Cause No. 1959 had obtained a judgment on plaintiff's cause of action against defendant, which had been paid and satisfied by defendant; and that the same issues were there involved as are involved in the present case. Defendant also pleaded in bar of the suit that plaintiff had split his cause of action, that he had two inconsistent causes of action, both arising out of the alleged breach of con-

tract, and that he had elected to sue in contract rather than tort, and was precluded from bringing a second suit in the same cause of action in another form, under the doctrine of election of remedies. The circuit court overruled the-e special pleas, stating that the two suits did not involve the same subject matter, since the previous case was an action on the contract for damages to the car, and the present suit is in tort for its wrongful conversion.

The case then proceeded to trial. Plaintiff offered three witnesses, the defendant none. Wilkinson testified that after the accident on May 15, 1949, the Webb Motor Company, which sold him the car, took it to their garage in Belzoni at his request. An agent of Potomac came to see plaintiff about an adjustment. Plaintiff told him that the car was not anything but junk, that he did not want it; that the agent could "take it and sell it for junk", which the agent tried unsuccessfully to do. After about a month and a half had transpired, during which plaintiff and defendant could not agree upon an adjustment, Wilkinson said that Potomac's agent picked up his car and took it to Greenwood without his consent. He had told the agent that he did not want the car repaired. After it had been taken to Greenwood, Wilkinson drove to that city and found it at the Delta Chevrolet Company. The foreman there told him that Potomac had left it. He then went to Greenville to the office of Sevier, also an agent of the company, where he was told that the agent would have to take it up with Potomac. Wilkinson testified that his car has never been returned to him by Potomac; and that he wrote the Company requesting its return, on September 30, 1949, and February 15, 1950. The last letter was to Potomac's General Agents in New Orleans. The car was taken from Belzoni without appellee's permission and knowledge. In response to plaintiff's letter of February 1950, the New Orleans General Agents of Potomac wrote that the company had decided that it had no liability in this

case and did not intend to pay anything. Wilkinson admitted that he got in touch with Potomac and told them he wanted an adjustment; and that Potomac advised him that it was necessary for two appraisals of the damage to be made. The estimates were made, but plaintiff and Potomac could not come to an adjustment of the loss. Apparently plaintiff was claiming a total loss. He was asked whether he received a letter from Delta Chevrolet Company advising that the storage on the car was $15 a month and asking him to move it. He answered that he did not carry the car there but the company did, and "I don't think I could take it away", since he did not deliver it to Delta. After plaintiff had advised Potomac that he did not want the wrecked car, he said that he told them to return it to Belzoni. He said "I told them I did not want it. I did not tell them to take it."

W. G. Bryan, a shop foreman at the Ford place in Belzoni, said that he looked at the car after the wreck and that its value was around $1,000. But he admitted that he made no estimate of the damages. R. L. Nelson was working in Belzoni at the Webb Motor Company when the damaged car was brought there. He made an estimate of its value at that time, after the accident, concluding that it was then worth about $1,400 or $1,500. On this evidence the case was submitted to a jury, which returned a verdict of $800, upon which the judgment of July 14, 1953, was based.

■■■ The evidence supports the jury's finding of conversion of the car by Potomac. There is no substantial contradiction of appellee's testimony that Potomac wrongfully took the car from his possession in Belzoni, moved it to Greenwood, and stored it in the garage in that city; that this taking was done without appellee's knowledge or consent; and that although requested to do so, Potomac has failed and refused to return the car to appellee's possession in Belzoni, where appellant had obtained

it. There is no showing that appellant took possession of the car under the limited circumstances set forth and permitted in Paragraph 13 of its policy. And the jury was amply warranted in finding that the converted property had a fair market value of $800. ■■■ Moreover, the trial court was correct in advising the jury that appellee could not recover punitive damages. So there is no merit in Wilkinson's cross appeal complaining of that action. According to his own testimony, he had previously told appellant that it could take the car and sell it for junk, but this had been tried, and no such sale was made. Wilkinson contended the car could not be repaired, and forbade its repair, but at the same time he told Potomac that he did not want it. He apparently desired to adjust the claim on the basis of a total loss. There was no evidence to indicate that appellant, the insurer, took the automobile with such a willful disregard of appellee's rights as to warrant punitive damages. The principal point urged by appellant is that the trial court erred in overruling its plea of res judicata, and its plea in bar based upon an election of remedies. It is argued that appellee had only one cause of action, growing out of the insurance contract; that all of appellee's damages arose out of that one cause of action; and that when he elected to sue first in contract, in Cause No. 1959, and recovered that judgment, he thereby elected to pursue that form of remedy on his one cause of action, and cannot now recover twice for only one cause of action.

However, the facts do not warrant that conclusion. ■■■ Appellee had, we think, two causes of action; one on the insurance contract for damages to his car on May 15, 1949, which was satisfied by a payment of the judgment in Cause No. 1959; and the second, an action for conversion of his car which occurred over a month after the collision. ■■■ These are two separate and distinct causes of action. The conversion damages did not grow out of or proximately result from the claim under the in-

surance contract. They occurred at a later date as the result of an independent wrongful act. Appellee has already been compensated for the damages to his car, but not for the car as damaged. Nor is the opinion of this Court in Cause No. 1959, 213 Miss. 520, 526, in conflict with this conclusion. It was there said only that counts in tort and in contract were inconsistent and could not be maintained in one suit. ██ ██ The applicable rule is set forth in 28 C. J. S., Election of Remedies, Section 3, page 1065: "Election of remedies is the act of choosing between different remedies allowed by law on the same state of facts, where the party has but one cause of action, one right infringed, one wrong to be redressed. The doctrine does not require election between distinct causes of action arising out of separate and distinct facts." See also 18 Am. Jur., Election of Remedies, Section 14.

Home Insurance Co. v. Tate Mercantile Co., 117 Miss. 760, 78 So. 709 (1917), relied upon by appellant, is clearly distinguishable. There the claimed damages resulting from the insurer's delay in payment of the loss grew out of the insurance contract and the fire loss under it. But here the conversion of the car was a separate and independent act, unconnected in terms of causation with the insurance. Similar distinctions can be made as to Agnew v. McElroy, 10 S. & M. 552 (Miss. 1848), and Perry v. Lewis, 49 Miss. 443 (1873). The judgment is therefore affirmed on both direct and cross appeals.

Affirmed on direct and cross appeals.

*Lee, Kyle, Holmes, Arrington* and *Gillespie, JJ.,* concur.